**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

JAMES MELVIN LEWIS,        )
                           )
            Plaintiff,         )
                           )    Case No. 14-cv-0356-FJG
v.                        )
                           )
UNITED STATES OF AMERICA,    )
                           )
            Defendant.     )

## ORDER

Pending before the Court is the Motion of the United States to Dismiss or, in the Alternative, for Summary Judgment (Doc. No. 28).

**I.    Facts**

The facts, briefly, are as follows.[1]  In 2012 and the first part of 2013, plaintiff's primary care physician at the Department of Veterans Affairs, Kansas City VA Medical Center (hereafter, "VA") was Patricia Neyman ("Dr. Neyman").  Plaintiff was seen at the VA by Dr. Neyman for degenerative disc disease, high blood pressure, elevated cholesterol, and impotence issues.  Even prior to being treated by Dr. Neyman, plaintiff had been on medicine to control his cholesterol beginning in approximately 2007.  None of the medications that Lewis took beginning in 2007 were effective in controlling his cholesterol.  Even prior to receiving treatment from Dr. Neyman, plaintiff had discontinued taking all cholesterol medication and his cholesterol levels remained elevated.

---

[1] In accordance with Local Rule 56.1(a), "[a]ll facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party." See Ruby v. Springfield R–12 Public School Dist., 76 F.3d 909, 911 n. 6 (8th Cir.1996).  In his response, plaintiff specifically controverted none of the facts presented by defendant.

In December 2012, plaintiff requested that the VA assign him to a new VA primary care physician because plaintiff felt that Dr. Neyman had what "appeared to be [a] lack of concern for [plaintiff's] health," although there had never been any cross words between plaintiff and Dr. Neyman. Plaintiff depo., pp. 6:23-8:5. Plaintiff just felt like Dr. Neyman was not as "responsive and fast-moving as [plaintiff] felt like she should be." Plaintiff depo., p. 10:15-21. Plaintiff had never had any issues with the actual treatment or care provided by Dr. Neyman. The VA refused plaintiff's request for reassignment because it believed that plaintiff was receiving proper care from Dr. Neyman.

Several weeks prior to May 13, 2013, plaintiff received a letter from the VA advising him to come in to have a blood test performed to check his cholesterol level. Subsequently, plaintiff also received a letter from Dr. Neyman's clinic requesting that he schedule a follow-up appointment following his blood test.

On May 6, 2013, plaintiff went in for his blood test. On May 13, 2013, plaintiff went in for his follow-up appointment with Dr. Neyman. After one of the nurses took plaintiff's blood pressure and temperature and weighed him, plaintiff was directed to an examination room to be seen by Dr. Neyman. Dr. Neyman came to the door of the examination room and told plaintiff that she would see him now and led plaintiff to her office. Dr. Neyman kept her office door open, and sat behind her desk while plaintiff sat in a chair at the desk's side. After plaintiff sat down, Dr. Neyman asked him either "What can I do for you" or "Why are you here?" Plaintiff depo., pp. 18:23 – 19:13. Plaintiff said that he was there "to check on the status of my health." Plaintiff depo., p. 23:17-22. Dr. Neyman responded that this was "too vague" and again asked plaintiff why he was in the office. Plaintiff depo., pp. 23:23-24, 25:25, 26:1-5. Plaintiff then

responded that he wanted the results of his lab report.  Plaintiff did not tell Dr. Neyman that he had come in for blood test for cholesterol the prior week.  Plaintiff assumed that Dr. Neyman had the lab results from his blood test for cholesterol, but she never said that she had these results or that she was aware that he had any testing done.

As Dr. Neyman began to respond, in plaintiff's opinion, she sounded "agitated." Plaintiff depo., pp. 25:3-14, 26:6-11.  However, Dr. Neyman never raised her voice or used any inappropriate language.  Plaintiff interrupted Dr. Neyman and requested that she call security to come witness the conversation.  Dr. Neyman then called security within 30 seconds of plaintiff's request.  After a few minutes, the security personnel arrived and interviewed both Lewis and Dr. Neyman.

Lewis told the security officer about the confrontation with Dr. Neyman and insisted "that he wanted a new doctor" assigned to him by the VA.  Plaintiff depo., pp. 34:25-35:24, 37:11-13. Lewis told the security officer that he believed Dr. Neyman may try to harm him, by which he meant "it was the manner in which she was conducting the interview that caused me to be fearful because she appeared not to have any knowledge as to why I was there."  Plaintiff depo., p. 36:4-11.  Dr. Neyman is 5'7" to 5'8" tall and weighs between 125-140 pounds.  Plaintiff, at the time of the events relevant to this action, was 6'3" and weighed between 260-275 pounds.  Plaintiff "never felt physically threatened by Dr. Neyman."  Plaintiff depo., p. 37:14-16.

Within 30 minutes of the security officer finishing his interview of plaintiff, another VA doctor arrived and told plaintiff the results of his blood test for elevated cholesterol. There was nothing about the test results that caused plaintiff to restart cholesterol medication or otherwise change his lifestyle.

Plaintiff is not claiming any physical injury from the confrontation with Dr. Neyman. Plaintiff is only claiming "garden variety emotional distress" from the confrontation with Dr. Neyman, specifically claiming that he has lost his appetite and has become "angry" and "frustrated." Plaintiff depo., pp. 42:19 – 43:4. The new anger and frustration that plaintiff has felt have not gotten him into any trouble or caused any specific problems or issues with any relationships maintained by plaintiff. Plaintiff currently weighs 298 pounds, 23 to 38 pounds more than on May 13, 2013.

On April 21, 2014, plaintiff filed the present lawsuit, seeking $500 million for emotional distress damages.

## II.    Standards

### A.  Motion for Judgment on the Pleadings under Rule 12(c)[2]

"Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." Faibisch v. Univ. of Minnesota, 304 F.3d 797, 803 (8th Cir.2002) (citations omitted). In considering a motion for judgment on the pleadings, the court "accept[s] as true all facts pleaded by the non-moving party and grant[s] all reasonable inferences from the pleadings in favor of the non-moving party." Id. (citations omitted). The Court reviews a motion for judgment on the pleadings under the same standard that governs motions to dismiss for failure to state a claim. Ashley County, Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir.2009); Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir.1990).

To survive a motion to dismiss for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to

---

[2] Although defendant indicates this motion is filed pursuant to Fed. R. Civ. P. 12(b)(6), this Court will consider this to be a motion to dismiss under Fed. R. Civ. P. 12(c), as an answer has already been filed and pleadings are closed.

4

relief." Fed.R.Civ.P. 8(a)(2). The claim for relief must be plausible on its face, meaning it must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007)). Mere "labels and conclusions," "formulaic recitation[s] of the elements of a cause of action," and "naked assertion[s] devoid of further factual enhancement" are insufficient. Id. (quoting Twombly, 550 U.S. at 555, 557).

B. Motion for Summary Judgment under Rule 56

Summary judgment is appropriate if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). The facts and inferences are viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–90 (1986). The moving party must carry the burden of establishing both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Matsushita, 475 U.S. at 586–90.

A nonmoving party must establish more than "the mere existence of a scintilla of evidence" in support of its position. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

> The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (citations and quotations omitted).

5

## III.    Discussion

Defendant argues that, affording plaintiff's pro se complaint a broad and liberal reading, plaintiff has attempted to state claims for intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence *per se*. The Court will consider these claims, below.

### A.    Intentional Infliction of Emotional Distress

In Missouri, to establish a claim for intentional infliction of emotional distress:

> [A] plaintiff must plead extreme and outrageous conduct by a defendant who intentionally or recklessly causes severe emotional distress that results in bodily harm. The conduct must have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. The conduct must be intended only to cause extreme emotional distress to the victim.

Gibson v. Brewer, 952 S.W.2d 239, 249 (Mo. 1997)(en banc)(citations omitted).

Additionally, in cases of either negligent or intentional infliction of emotional distress where there is no physical injury, plaintiffs must additionally establish:

(1)    the defendant should have realized that his conduct involved an "unreasonable risk" of causing the distress; and

(2)    the resulting emotional distress or mental injury must be "medically diagnosable" and must be of sufficient severity so as to be "medically significant."

Bass v. Nooney Co., 646 S.W.2d 765, 772-73 (Mo. 1983) (en banc).

Here, defendant argues that plaintiff has failed to plead and prove that: (1) Dr. Neyman should have realized her conduct involved an unreasonable risk of causing distress; (2) plaintiff's resulting mental injury is both medically diagnosable and medically significant; and (3) Dr. Neyman's conduct was "extreme and outrageous."

Defendant states that plaintiff's allegations and the undisputed facts fail to establish that Dr. Neyman should have realized that a reasonable patient would be distressed by a doctor asking the patient why he or she was visiting the doctor. Defendant cites to numerous Missouri cases finding that more serious conduct on the part of defendants than what is present in this case does not involve an unreasonable risk of causing distress.  See, e.g., St. Anthony's Medical Center v. H.S.H., 974 S.W.2d 606, 613 (Mo. App. 1998) (disclosing medical records to a patient's spouse in response to discovery requests in divorce proceedings poses no unreasonable risk of causing distress); Snelling v. City of St. Louis, Dept. of Public Utilities – Water Div., 897 S.W.2d 642, 646 (Mo. App. 1995) (finding a city utility's failure to install a proper water shut-off valve poses no unreasonable risk of causing distress); Ford v. Aldi, Inc., 832 S.W.2d 1, 2 (Mo. App. 1992) (finding plaintiff failed to plead or prove that a grocery store should have known that plaintiff would suffer extreme distress from finding a dead insect in a can of spinach).

In response, plaintiff notes that he pled that on May 13, 2013, at 1:03 p.m., his vitals were taken by Dr. Neyman's nurse.  Doc. No. 29, pp. 3-4, ¶ 5.  Then, at 1:19 p.m., Dr. Neyman began her interview with plaintiff by asking what the reason for his visit was.  Id. He responded that he was there because of the letter he received stating labs had been ordered, and he wanted to hear the results.  Id. The doctor told him that reason was too vague, and she wanted to know the specific reason he was there. Id. After repeating this exchange, the doctor asked plaintiff why has was there, and plaintiff answered, "You are the Doctor, if you do not know how am I to know?"  Id. Then, plaintiff asked Dr. Neyman to call security, and she "became irate," but called security, "dropping the telephone receiver on her desk before handing the telephone to plaintiff."

Id.  Plaintiff then notes that he met with the security officer at 1:27 p.m.  Doc. No. 29, p. 4, ¶ 6.  In his response to the motion (Doc. No. 29), Plaintiff then discusses such irrelevant topics as subject matter jurisdiction, and the fact that the VA, in its administrative proceedings involving plaintiff's claim, never found that plaintiff failed to claim negligence *per se* and negligent infliction of emotional distress (even though the VA denied plaintiff's FTCA application, finding that no compensable harm was committed by the VA employee acting in the scope of her employment).

It is apparent that plaintiff misunderstands defendant's arguments and the scope of this Court's review.  The finding by the VA that no compensable harm was committed by Dr. Neyman is fully compatible with the arguments that (1) plaintiff has failed to state a claim upon which relief may be granted, and (2) viewing the undisputed facts in the light most favorable to plaintiff, defendant is entitled to judgment as a matter of law.  In this instance, the Court finds that no ordinary person would suffer severe emotional distress through the actions of Dr. Neyman, as related by plaintiff in his complaint (Doc. No. 1), his deposition, and his suggestions in opposition to the pending motion.  In none of these documents has plaintiff provided any information from which the Court could conclude that Dr. Neyman should have realized that plaintiff would be distressed by her questions.  The Court finds, therefore, that plaintiff's claims for intentional infliction of emotional distress fail.

Furthermore, defendant argues that plaintiff cannot plead and prove a diagnosable and significant mental injury, because in order to do so, plaintiff must set forth medical proof.  State ex rel. Dean v. Cunningham, 182 S.W.3d 561, 568 (Mo. 2006) (en banc); Casey v. Casey, 736 S.W.2d 69, 72 (Mo. App. 1987).  Here, in plaintiff's complaint, plaintiff acknowledges: "[T]he plaintiff has suffered garden variety

emotional distress in the form of agitation, anger, humiliation, and embarrassment. He has not consulted a professional for care and he does not intend to submit any documentation diagnosing his emotional distress." Complaint, Doc. No. 1, ¶ 11. In his response to the pending motion, plaintiff reiterates that all he seeks are garden variety emotional distress damages, and that he has not sought medical care for his emotional distress. Doc. No. 29, p. 5, ¶ 11. Thus, the Court finds that plaintiff has not pled that he has suffered a diagnosable and significant injury, and therefore has not pled a claim upon which relief may be granted.

Finally, defendant states that plaintiff's allegations and the undisputed facts do not show that Dr. Neyman's conduct was extreme and outrageous sufficient to state a claim for intentional infliction of emotional distress. Conduct rises to the level of extreme and outrageous when it is "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency" and is "atrocious, and utterly intolerable in a civilized community." May v. Greater Kansas City Dental Soc., 863 S.W.2d 941, 948 (Mo. App. 1993). The Eighth Circuit has found that "Missouri case law reveals very few factual scenarios sufficient to support a claim for intentional infliction of emotional distress," and "[r]arely is a defendant's conduct sufficiently extreme and outrageous to warrant recovery." Kansas City Laser, Inc. v. MCI Telecommunications Corp., 252 Fed. Appx. 100, 104 (8th Cir. 2007). This Court finds that neither the allegations in plaintiff's complaint nor the undisputed facts taken in the light most favorable to plaintiff are sufficient to show that Dr. Neyman's conduct was so outrageous in character and extreme in degree to go beyond all possible bounds of decency. May, 863 S.W.2d at 948. Therefore, for this separate reason, plaintiff's intentional infliction of emotional distress claim must be dismissed.

9

B.    Negligent Infliction of Emotional Distress

Under Missouri law, a plaintiff must plead and prove the following elements to demonstrate a claim for negligent infliction of emotional distress:

(1)    a legal duty of the defendant to protect the plaintiff from injury;

(2)    breach of that duty;

(3)    proximate cause; and

(4)    injury to the plaintiff.

Thornburg v. Fed. Express Corp., 62 S.W.3d 421, 427 (Mo. App. 2001).

Again, as noted above, in cases of either negligent or intentional infliction of emotional distress where there is no physical injury, plaintiffs must additionally establish:

(1)    the defendant should have realized that his conduct involved an "unreasonable risk" of causing the distress; and

(2)    the resulting emotional distress or mental injury must be "medically diagnosable" and must be of sufficient severity so as to be "medically significant."

Bass, 646 S.W.2d at 772-73.

Here, defendant argues that plaintiff has failed to plead and prove that: (1) Dr. Neyman should have realized her conduct involved an unreasonable risk of causing distress; and (2) plaintiff's resulting mental injury is both medically diagnosable and medically significant.  For the same reasons as stated above in relation to plaintiff's intentional infliction of emotional distress claim, the Court agrees with defendant that accepting plaintiff's version of the events as true, plaintiff has not set forth any facts in which a factfinder could find that Dr. Neyman should have realized that her conduct involved an unreasonable risk of causing distress.  Furthermore, plaintiff has not set forth any facts demonstrating that his resulting injury is medically diagnosable and

10

medically significant. Therefore, summary judgment in defendant's favor must be entered on plaintiff's claims for negligent infliction of emotional distress.

C. Negligence *Per Se*

Finally, plaintiff states in his complaint that Dr. Neyman violated Missouri's elder abuse criminal statute, R.S.Mo. § 565.184.1(4), which provides that elder abuse in the third degree occurs when a party "[i]ntentionally fails to provide care, goods or services to a person sixty years of age or older . . . . The result of the conduct shall be such as would cause a reasonable person age sixty or older . . . to suffer physical or emotional distress. . . ." See Complaint, Doc. No. 1, ¶¶ 2, 12. Under the FTCA, the United States may be liable under a "negligence *per se*" theory (Boles v. United States, 3 F.Supp.3d 491, 508 (M.D. N.C. 2014)), but only if the plaintiff can establish that a private person in like circumstances would be liable under state law. 28 U.S.C. §§ 1346(b), 2674. Therefore, the Court must consider whether plaintiff has stated a viable claim of elder abuse under Missouri state law.

Defendant argues that plaintiff cannot establish that it violated R.S.Mo. § 565.184.1(4). Assuming that Dr. Neyman intentionally failed to provide care, goods or services to plaintiff, defendant states there is no basis to conclude that a reasonable person age sixty or above would suffer physical or emotional distress due to the comments allegedly made by Dr. Neyman. The Court agrees with defendant. Viewing the facts in the light most favorable to plaintiff, the Court finds that no reasonable person would have suffered physical or emotional distress due to the comments allegedly made by Dr. Neyman on May 13, 2013. Therefore, plaintiff's negligence *per se* claim must also be dismissed.

11

**IV.     Conclusion**

Accordingly, for all the reasons stated herein, the Motion of the United States to Dismiss or, in the Alternative, for Summary Judgment (Doc. No. 28) is **GRANTED**.  This case is **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**


Date:   August 24, 2015                                    **/S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri                                      Fernando J. Gaitan, Jr.
                                                           United States District Judge

12